**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN H. WOODRING, JR.** | : | |
| Plaintiff | : | CIVIL ACTION NO. 16-2253 |
| v. | : | (JUDGE MANNION) |
| **NANCY A. BERRYHILL**[1] | : | |
| Defendant | : | |

## MEMORANDUM

### I. INTRODUCTION

John H. Woodring, Jr. ("Woodring") brings this action pursuant to 42 U.S.C. §405(g) and §1383(c)(3) to review the final decision of the Commissioner of Social Security ("Commissioner") partially denying his claim for Social Security Income Benefits ("SSI") and Social Security Disability

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. On March 6, 2018, the Government Accountability Office stated that, as of November 17, 2017, Ms. Berryhill's status violated the Federal Vacancies Reform Act, which limits the time a position can be filled by an acting official and "[t]herefore Ms. Berryhill was not authorized to continue serving using the title of Acting Commissioner..." *Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1988 Commissioner, Social Security Administration.* Government Accountability Office. March 6, 2018. However, Ms. Berryhill continues to functionally lead the Social Security Administration from her position of record as Deputy Commissioner of Operations. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin, Acting Commissioner of Social Security, as the defendant in this suit.

Insurance Benefits ("DIB"). (Doc. 1, at 1). Woodring was awarded SSI and DIB from March 21, 2012 through December 18, 2013. (Doc. 12-2, at 42). The Administrative Law Judge ("ALJ") restricted Woodring's award of benefits to the above time period because he determined that Woodring experienced a medical improvement, which rendered Woodring no longer disabled or entitled to benefits as of December 19, 2013. (Doc. 12-2, at 35). Woodring alleges that any medical improvement he experienced was only temporary, which does not qualify as substantial evidence to support a finding of medical improvement. (Doc. 15, at 19). In addition, Woodring alleges that the ALJ erred by failing to include Woodring's need to use a cane in his residual functional capacity ("RFC") assessment. (Doc. 15, at 21).

The record in this action has been reviewed pursuant to 42 U.S.C. §405(g) to determine whether there is substantial evidence to support the Commissioner's decision partially denying the Woodring's claim for DIB and SSI under the Social Security Act ("Act"). 42 U.S.C. §§401-433, 42 U.S.C. §§1381-1383f.

For the reasons set forth here, the Commissioner's decision will be **AFFIRMED IN PART** and **REVERSED IN PART**. This case will be **REMANDED** to the Commissioner.

## II. BACKGROUND

Woodring applied for SSI and DIB alleging he became disabled on March 21, 2012. (Doc. 12-2, at 24). After submitting evidence and testifying before an ALJ, Woodring was only awarded benefits from his alleged onset date through December 18, 2013 because, according to the ALJ, Woodring's disability ended. (Doc. 12-2, at 41-42). Woodring now appeals and seeks to reverse that unfavorable portion of the ALJ's decision. (Doc. 15, at 23).

Woodring filed his applications for DIB and SSI on June 6, 2013. (Doc. 12-2, at 24). Those applications were denied on October 9, 2013 and Woodring requested a hearing before an ALJ. (Doc. 12-2, at 24). The ALJ conducted a hearing on December 3, 2014 where he took testimony from Woodring and a vocational expert. (Doc. 12-2, at 24). On May 26, 2015, the ALJ issued a decision finding the Woodring was disabled from March 21, 2012 through December 18, 2013. (Doc. 12-2, at 20-42). The ALJ denied Woodring's request for benefits after December 19, 2013. (Doc. 12-2, at 20-42). Woodring requested review by the Appeals Council, but they denied his request, thereby making the ALJ's decision the final determination of the Commissioner. (Doc. 12-2, at 1-6).

Woodring filed his complaint challenging the ALJ's determinations on November 8, 2016. (Doc. 1). He filed his brief on April 3, 2017 (Doc. 15) and

the Commissioner filed her brief on April 26, 2017. (Doc. 16). Woodring subsequently filed a reply brief. (Doc. 17). The case is now ripe for the court's ruling.

### III. STANDARD OF REVIEW

When reviewing the final decision of the Commissioner, the court's review is limited to determining whether her decision is supported by substantial evidence. 42 U.S.C. §§405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 203 (3d Cir.

2008). Therefore, a reviewing court must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

## IV. DISABILITY DETERMINATION PROCESS

A five-step process is required to determine if an applicant is disabled under the Act. The Commissioner must sequentially determine: (1) whether the applicant is engaged in substantial gainful activity; (2) whether the applicant has a severe impairment; (3) whether the applicant's impairment meets or equals a listed impairment; (4) whether the applicant's impairment prevents the applicant from doing past relevant work, and (5) whether the applicant's impairment prevents the applicant from doing any other work. 20 C.F.R. §§404.1520, 416.920.

## V. THE ALJ'S DECISION

The ALJ found that Woodring met the insured status requirements of the Act through December 31, 2014. (Doc. 12-2, at 24). The ALJ also determined that Woodring was "a person closely approaching advanced age" under 20 C.F.R. §404.1563. (Doc. 12-2, at 33). Additionally, the ALJ found that Woodring has a high school education, can communicate in English, has job skills that do not transfer to other occupations within the RFC, and that he was

disabled, as defined by the Act, from March 21, 2012 through December 18, 2013. (Doc. 12-2, at 33).

Using the above-outlined disability determination process, the ALJ found that Wooding has not engaged in substantial gainful activity since March 21, 2012, the onset date of Woodring's disability. (Doc. 12-2, at 28). Next, the ALJ determined that Woodring had the severe impairments of degenerative disc disease of the lumbosacral spine, generalized osteoarthritis, major depressive disorder, and bipolar affective disorder. (Doc. 12-2, at 28). The ALJ stated that Woodring's impairments do not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 12-2, at 30), but his impairments prevent him from doing any past relevant work. (Doc. 12-2, at 40). From March 21, 2012 to December 18, 2013, the ALJ found that Woodring had the residual functional capacity ("RFC") to perform sedentary work with the mental capacity to perform routine, repetitive tasks. (Doc. 12-2, at 30). Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. *See* Social Security Ruling 96-8p, 61 *Fed. Reg.* 34475. After considering Woodring's age, education, work experience, and RFC, the ALJ determined there were no jobs existing in significant numbers that Woodring could perform. (Doc. 12-2, at 33). Thus, the ALJ concluded that

Woodring was disabled for the period between March 21, 2012 and December 18, 2013. (Doc. 12-2, at 33). However, the ALJ further concluded that Woodring experienced a medical improvement and that as of December 19, 2013, Woodring retained the RFC to perform light work with certain limitations and therefore was no longer disabled under 20 C.F.R. §§404.1567(b), 416.967(b). (Doc. 12-2, at 36) (Doc. 12-2, at 41).

The ALJ reasoned that because Woodring's RFC increased and allowed him to perform light work that his medical improvement was related to his ability to work. (Doc. 12-2, at 36). In addition, the ALJ's findings included the nonexertional limitations that Woodring's work be unskilled, consist of routine, repetitive tasks, and involve no interaction with the public. (Doc. 12-2, at 36). Woodring was further limited to avoid frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and occasional crawling. (Doc.12-2, at 36). He should never climb ladders, ropes or scaffolding, or reach above shoulder level bilaterally. (Doc. 12-2, at 36). Finally, Woodring should have no exposure to hazards such as unprotected heights and dangerous equipment and no concentrated exposure to vibration, cold temperatures, dampness, wetness, fumes, odors, dusts, gases or poor ventilation. (Doc. 12-2, at 37).

## VI. DISCUSSION

At issue here is whether the ALJ's finding—that Woodring experienced a medical improvement on December 19, 2013 enabling him to perform light work—is supported by substantial evidence. In his appeal, Woodring asserts that any medical improvement he experienced regarding his hands was only temporary and that the ALJ failed to include any restrictions regarding Woodring's use of his hands and use of a cane in his second RFC, so Woodring's benefits should not cease as of December 18, 2013. (Doc. 15, at 19-20).

When determining a claimant's RFC, the ALJ must consider all relevant evidence, including medical evidence of record and the claimant's subjective complaints. 20 C.F.R. §404.1545(a). The responsibility for determining a claimant's RFC at the hearing level is reserved for the ALJ. 20 C.F.R. §404.1546. The final responsibility for determining the RFC is reserved for the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. §404.1527(e)(2)-(3).

As discussed briefly above, the ALJ, in this case, formed two RFC's regarding Woodring. First, he concluded that Woodring could perform less than a full range of sedentary work from March 12, 2012 through December 18, 2013. (Doc. 12-2, at 30). Then, the ALJ found that Woodring had a

medical improvement on December 19, 2013, which enabled him to perform light work, as reflected in his second RFC. (Doc. 12-2, at 36-37). "As is normally the case, [these conclusions were] based in large measure on the testimony provided by the vocational expert." *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).

> Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert. The ALJ will normally ask the expert whether, given certain assumptions about the claimant's physical capability, the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy. While the ALJ may proffer a variety of assumptions to the expert, *the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments*. Thus the expert must have evaluated claimant's particular impairments as contained in the record.

*Id.* (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) (emphasis added)). While the ALJ does not need to submit every impairment alleged by a claimant to the ALJ, they must convey all of a "claimant's credibly established limitations." *Rutherford*, 399 F.3d at 554. "Limitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response. *Id.* (citing *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002)). Even if medically supported limitations are contradicted by

other evidence, "the ALJ can chose to credit portions of the existing evidence but 'cannot reject evidence for no reason or for the wrong reason.'" *Rutherford*, 399 F.3d at 554 (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)).

In establishing Woodring's first RFC, the ALJ assigned significant weight to the opinions of Drs. Haq and Digamber. (Doc. 12-2, at 32). Woodring began treating with Dr. Haq on March 12, 2012, who diagnosed Woodring with Heberden's nodes and sixty percent grip strength in both hands. (Doc. 12-7, at 300). Dr. Haq indicated that Woodring's abilities to reach, handle, and finger are affected by his impairments. (Doc. 12-2, at 32). On August 20, 2013, Woodring was assessed by Dr. Digamber, who determined that he had Herberden's nodes, a very weak grip, and could not extend his fingers completely or make a formed fist. (Doc. 12-7, at 326). While Woodring was able to "open a jar, open a door, pick up coins, write, and use [his] hands to button and unbutton without problem," (Doc. 12-7, at 329), Dr. Digamber's impression was that Woodring was unable to make a firm grip and tended to drop things. (Doc. 12-7, at 331). During a physical examination, Dr. Digamber noted that Woodring was unable to stand, rise from the seated position or step up and down from the exam table without difficulty or assistive devices. (Doc. 12-7, at 327). As Dr. Digamber described, "[w]ithout the cane the claimant's

gait is unsteady and the claimant walks with a limp and also walks like a duck." (Doc. 12-7, at 330). Although the ALJ did acknowledge Dr. Digamber's opinion—that Woodring required a cane for ambulation— in his decision; the ALJ did not mention that on the same page of the medical records, Dr. Digamber also indicated that Woodring's cane was medically necessary. (Doc. 12-7, at 334). As support for the opinions of Drs. Haq and Digamber, the ALJ cited medical evidence demonstrating Wooding's Herberden's nodes, inability to make a fist or straighten his hands, the decreased sensation of his forearms, hands, and feet, the unsteadiness of his gait necessitating that he use a cane, and the effect that pain, depression and difficulty sleeping had upon his functional abilities. (Doc. 12-2, at 32).

While the first RFC does not directly indicate which individual limitations that the ALJ believed Woodring possessed, the significant weight given to Dr. Digamber's opinion and the supporting medical evidence relating to Woodring's need to use a cane cited by the ALJ, indicate that he considered the cane to be one of Woodring's limitations. At no point throughout the hearing did the ALJ inform the vocational expert about Woodring's need to use a cane or his unsteady gait requiring him to use a cane. Because the ALJ failed to tell the vocational expert about Woodring's need to use a cane or anything relating to his limitation that is supported by medical evidence, the

ALJ erred by using the vocational expert's opinion to support his disability determination. See Rutherford, 399 F.3d at 554 (citing Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002)). Nonetheless, this error is harmless to the ALJ's decision to award Woodring benefits from March 21, 2012 through December 18, 2013. Not only did neither party contest the ALJ's initial award of benefits in their briefs, but also additional information regarding Woodring's limitations would serve no other purpose than to provide additional evidence of disability. Therefore, the Commissioner's decision to award Woodring benefits from March 21, 2012 through December 19, 2013 shall be affirmed.

After finding that Woodring experienced a medical improvement in his condition, the ALJ formed a second RFC for Woodring. (Doc. 12-2, at 36-40). This time at step five in the disability determination process, the ALJ found there are "jobs that exist in significant numbers in the national economy that the claimant [Woodring] can perform." (Doc. 12-2, at 41). Specifically, the ALJ asked the vocational expert whether jobs exist in the national economy for an individual with Woodring's age, education, work experience, and RFC. (Doc. 12-2, at 41). Based on the testimony of the vocational expert, the ALJ found that beginning December 19, 2013, Woodring has been capable of making a successful adjustment to work; and therefore, is no longer disabled. (Doc. 12-2, at 41). "While the ALJ may proffer a variety of assumptions to the expert,

the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Rutherford,* 399 F.3d at 553-54 (quoting *Podedworny,* 745 F.2d at 218). Because the vocational expert did not have the full picture of Woodring's limitations, his opinion cannot be relied on by the ALJ to support a finding that Woodring is no longer disabled. *See Rutherford,* 399 F.3d at 554 (citing *Burns v. Barnhart,* 312 F.3d 113, 123 (3d Cir. 2002)). Thus, the Commissioner's decision to terminate Wooding's benefits as of December 19, 2013 shall be reversed and this matter will be remanded to the Commissioner for further investigation.

### VII. CONCLUSION

Based on the foregoing, the Commissioner's decision will be **AFFIRMED IN PART** and **REVERSED IN PART**. This matter shall be **REMANDED** to the Commissioner. An appropriate order shall issue.

s/ *Malachy E. Mannion*

**MALACHY E. MANNION**
**United States District Judge**

**DATE: December 10, 2018**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-2253-01.docx